## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-22303-CIV-HOEVELER

**HOWARD LENDER,**

Plaintiff,

v.

**GEICO GENERAL INSURANCE
COMPANY, a foreign corporation,**

Defendant.

_____/

## ORDER GRANTING MOTIONS TO COMPEL AND DENYING MOTION TO STRIKE PUNITIVE DAMAGES CLAIM

Plaintiff filed this case against his insurer in federal court, based on diversity

jurisdiction, pursuant to Fla. Stat. § 624.155, alleging that Defendant GEICO violated

Florida's bad faith statute prohibiting unfair claim settlement practices, Fla. Stat.

§ 626.9541(1)(l). Specifically, Plaintiff complains that Defendant GEICO failed to

properly handle Plaintiff's claim for underinsured motorist benefits owed to him

according to his policy when Plaintiff was injured in an accident with another GEICO

insured. As a result of GEICO's failure to pay Plaintiff's claim, Plaintiff sued GEICO and

the other insured person and on May 14, 2009, after a jury trial, Plaintiff was awarded a

judgment against GEICO in the amount of $317,967.76. (Plaintiff reportedly settled the

claim against the other driver for $25,000, that driver's insurance policy limits, early in

that litigation.)  The limit of Plaintiff's own underinsured/uninsured motorist coverage

was $300,000.

Plaintiff complains that the litigation would not have been necessary if GEICO

had processed his claim properly, and also argues that GEICO improperly retained the

same law firm to represent itself and the other insured person in Plaintiff's lawsuit brought against both of them (GEICO and the other insured).

Based on well-established precedent, the Court already ordered Defendant to provide the complete claim file to Plaintiff, with a privilege log as to any items withheld based upon a claim of privilege. Subsequent to a hearing before the Court, Defendant has amended the privilege log as to the claims file twice, and clarified that it is asserting only an attorney-client privilege (and not a work-product privilege) as to the remaining withheld documents. Defendant also has amended the privilege log submitted as to attorney James Clark's file three times and finally produced many items as to which Defendant previously asserted a privilege; but continues to withhold several items.[1]

At a hearing before the Court, defense counsel asserted that there are two types of documents at issue (found in both the claims file and Clark's file), and that the attorney-client privilege should protect both types of documents from disclosure: documents reflecting communication between the attorney and client in the underlying underinsured motorist case, and documentation of attorney advice in that case. (Defense counsel also claimed privilege as to communications between attorney and client in the present case, but Plaintiff is not seeking those communications.)

As Defendant asserts an attorney-client privilege as to the items withheld from the claims file and Clark's file, the Court first must determine whether such items are protected by that privilege and then address whether the privilege has been waived or is otherwise subject to exception. As Florida law governs application of the attorney-client

---

[1]At the hearing on March 26, counsel for Defendant stated that he was not claiming privilege protections as to the history of attorney Clark's employment by Defendant, and appears now to have responded to discovery requests as to this issue.

privilege in a federal diversity action where state law supplies the rule of decision for the claim, Fed. R. Evid. 501, the Court briefly reviews Fla. Stat. § 90.502 and interpretive case decisions.

It is undisputed that the items withheld by Defendant in this case meet the definitions of lawyer-client privilege contained in Fla. Stat. § 90.502, and it is also undisputed that the privilege is not absolute, (the statute itself allows for several exceptions to the privilege, Fla. Stat. § 90.502(4)).  The present case is a bad faith case brought after resolution - by the state trial court - of the underlying claim in the insured's favor.  The Supreme Court of Florida's decision in Allstate Indemnity Company v. Ruiz, 899 So. 2d 1121 (Fla. 2005), reminds us that "bad faith actions do not exist in a vacuum."  Id. at 1124.

The Supreme Court's decision in Ruiz eliminated a distinction that had developed in Florida between first-party bad faith and third-party bad faith actions in Florida (which had developed, at least in part, as a result of the relatively recently created statutory first-party bad faith action in 1982, although third-party actions had been recognized in Florida common law since 1938), see Ruiz, at 1125 - 1129.  While the state's highest court addressed only the work-product privilege in Ruiz, the opinion makes clear that the claim file is "virtually the only source of direct evidence with regard to the essential issue of the insurance company's handling of the insured's claim," id. at 1128, and "there is simply no logical or legally tenable basis upon which to deny access to the very information that is necessary to advance such action but also necessary to fairly evaluate the allegations of bad faith," id. at 1128-1129.  In Ruiz, the Supreme Court of Florida described as discoverable "all materials" including "related litigation file

material that was created up to and including the date of resolution of the underlying disputed matter and pertain [sic] in any way to coverage, benefits, liability, or damages" 1129-30.

As the Supreme Court of Florida has not yet explicitly held that attorney-client privilege is inapplicable in a first-party bad faith context, this Court must follow decisions of Florida's intermediate appellate courts unless there is "persuasive indication" from the Supreme Court of Florida that it would decide the issue differently. Flintkote Co. v. Dravo Corp., 678 F.2d 942, 945 (11th Cir. 1982). As noted in a well-supported decision by Magistrate Judge Simonton, "it is apparent from the opinion [in Ruiz] that the Court intended to abolish the attorney-client privilege as well as work product immunity from discovery" in the insurance bad faith context. Nowak v. Lexington Ins. Co., 464 F. Supp. 2d 1241 (S.D. Fla. 2006).[2] In light of this "persuasive indication" from the Supreme Court of Florida, the Court need not address the reasoning of the decisions of those intermediate appellate courts which appear to conclude that attorney-client communications (contained in the claims file) are protected from discovery in a bad faith action against the insurer by the insured. See, e.g., West Bend Mutual Ins. Co. v. Higgins, 9 So. 3d 655 (Fla. 5th Dist. Ct. App. 2009).

"In [insurer bad faith cases], the pertinent issue is the manner in which the company has handled the suit including its consideration of the advice of counsel so as

---

[2]The decision of Magistrate Judge Simonton was upheld after objections were filed, 2006 U.S. Dist. LEXIS 92674 (S.D. Fla. 2006), and then the decision was certified for the insurer to seek immediate appellate review as to whether the attorney-client privilege is a bar to discovery in a first party bad faith action, 2006 U.S. Dist. LEXIS 92386 (S.D. Fla. 2006), which - according to a review of the case docket - the Eleventh Circuit rejected. Several months later, the case settled.

to discharge its mandated duty of good faith. Virtually the only source of information on these questions is the claim file itself. Accordingly... it has been consistently held in our state that a claim file is subject to production in such an action." Ruiz, 899 So.2d at 1129, citing Fidelity & Cas. Ins. Co. v. Taylor, 525 So.2d 908, 909-10 (Fla. 3rd Dist. Ct. App. 1987) (citations omitted). It seems clear that the "all materials" referenced in Ruiz includes materials between the insurer and its counsel related to the claim and generated prior to resolution of the underlying dispute. Mayfair House Ass'n v. QBE Ins. Corp., 2010 U.S. Dist. LEXIS 20253 (S.D. Fla. Feb. 5, 2010) (citing several cases). This Court finds that the Ruiz decision compels the conclusion that the attorney-client privilege has been eviscerated in this specific context; therefore, Plaintiff's motions to compel are GRANTED.[3]

As to the motion to compel production of the complete claims file, Defendant shall provide to Plaintiff, within ten (10) days, all items on the privilege log except the following items which shall be provided to the Court for *in camera* inspection within ten (10) days:

* GEICO Activity Log for any date after May 14, 2009
* Bates No. D00768-769, dated May 15, 2009 (communications regarding reserves and bills for payment)
* Bates No. D00856-862, dated June 8, 2009 (defense bill).[4]
As to the motion to compel production of Clark's file, the entire file shall be

_____

[3]Plaintiff's Motion to Strike Defendant's Opposition to the motions to compel is DENIED.

[4]The item identified as Bates No. D00651-652, a summary of the deposition of Dr. Brown, apparently was mistakenly dated Oct. 16, 2009, on the privilege log submitted by Defendant as to the claims file. The item appears to be related to an item identified as Bates No. CLARK00590-00592 in the privilege log submitted by Defendant as to Clark's file, and that item is dated Oct. 15, 2008. The Court directs Defendant to produce Bates No. D00651-652 directly to Plaintiff.

provided to Plaintiff, within ten (10) days.

As part of Defendant's Answer and Affirmative Defenses, Defendant moved to strike the request for punitive damages. Plaintiff responded in opposition, arguing that Plaintiff has met the pleading requirements, particularly noting that Florida's insurance bad faith statute includes a punitive damages provision; the Court agrees. Defendant's motion to strike the request for punitive damages is DENIED. Further, the parties' motion for referral of pre-trial matters to Magistrate Judge is MOOT, in light of the above rulings. The Court will, of course, consider any future requests for referral of pre-trial matters to a Magistrate Judge as appropriate.

Finally, Plaintiff's motion for entry of a scheduling order is GRANTED. The Court will enter a Scheduling Order by separate Order.

DONE AND ORDERED in Chambers in Miami this $\underset{\nu}{2}$ day of September 2010.

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

Copies furnished:
Stephen A. Marino, Jr.
Karen J. Lane
Clerk of Court